KENYON & KENYON LLP
One Broadway
New York, New York 10004
Telephone:    (212) 425-7200
Facsimile:    (212) 425-5288

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| INFOSINT S.A.,<br><br>     Plaintiff,<br><br> -against -<br><br>H. LUNDBECK A/S, LUNDBECK, INC.,<br>and FOREST LABORATORIES, INC.,<br><br>    Defendants. | Case No.:  06 CV 2869 (LAK) (RLE)<br><br>     ECF Case |

## INFOSINT S.A.'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR ENTRY OF PROTECTIVE ORDER

Pursuant to Federal Rule of Civil Procedure 26(c)(7) and the Court's Order of March 23, 2007, plaintiff Infosint S.A. ("Infosint") hereby moves this Court for the entry of  a protective order governing the exchange of confidential information between the parties.

## BACKGROUND

This is a patent infringement action.  Infosint owns two patents that claim processes for the synthesis of the drug citalopram.  The particular feature that is the subject of the patents is a novel method of making one of the intermediates in the overall citalopram synthesis.  Defendants have infringed the patents by marketing citalopram products in the United States, in particular the drugs Celexa® and Lexapro®, which were made by the claimed process.

The parties have exchanged discovery requests and responses, and have produced certain documents to each other.  Because both sides recognize that the documents and other discovery materials include trade secrets and other confidential information, they have agreed that a protective order is necessary to prevent unauthorized dissemination of that information.  For the time being, the parties have agreed to maintain the information they obtain in discovery from each other on a "Confidential-Outside Counsel's Eyes Only" basis, pending the entry of such a protective order.

With respect to the protective order, the parties have resolved every issue except one: who for each side will have access to information designated confidential by the other.  Infosint proposes a "one tier" protective order under which all designated information would be available to all the parties' designated counsel.  Defendants, on the other hand, propose a "two tier" protective order under which confidential information could be designated "Confidential" or "Highly Confidential."  The information designated "Confidential" would be available to all designated counsel (outside, inside and foreign), while information designated "Highly Confidential" would be available only to U.S. trial counsel.[1]

Infosint's proposal (Exhibit A hereto) provides that "Confidential," when applied to a document,

> … shall mean that a Party claims in good faith that the document contains or discloses information relating to, referencing or pertaining to trade secrets or other confidential research, development or commercial information within the meaning of Federal Rule of Civil Procedure 26(c)(7).

(Exhibit A, ¶3).  It then sets forth who for each side should have access to the other's "Confidential" information:

---

[1]      The parties agree that all information should be available to retained experts.

(a)  Outside counsel for the respective Parties to this litigation who have entered an appearance in this litigation and the secretarial, clerical, paralegal and other supporting personnel of said outside counsel;

(b)  Outside Italian counsel for Infosint S.A.: Stefano de Bosio, Paolo Nodari, and Gianfranco Dragotti and the secretarial, clerical, paralegal and other supporting personnel reporting to them;

(c)  Charles Ryan, John Meidahl Petersen, and Thomas Kirkback, In-house counsel for Forest Laboratories and H. Lundbeck A/S and the secretarial, clerical, paralegal and other supporting personnel reporting to them;

(d)  Experts or consultants (and their employees or clerical assistants) who are not employees of any Party, and who are retained or otherwise consulted by outside counsel to assist  in the preparation and trial of this litigation.

(e)   Court personnel in the conduct of their official duties and the trier of fact;

(f)   Qualified persons taking testimony, such as court reporters and videographers, and necessary stenographic and clerical personnel reporting to them;

(g)  Duplicating services and auxiliary services of like nature, routinely engaged by outside counsel;

(h)  Litigation support services retained by Parties to prepare document databases, trial exhibits and the like;  and

(i) Translators who agree to be bound by this protective order and sign the undertaking attached hereto, and secretarial and other support personnel employed by them.

(Exhibit A, ¶6.)

Thus, Infosint's proposal would treat all information produced by Lundbeck the same for purposes of confidentiality.  Such information would be available to Infosint's outside U.S. trial counsel, Kenyon & Kenyon LLP (¶6(a)), and to Infosint's Italian counsel, Mr. Nodari, Mr. De Bosio, and Dr. Dragotti (¶6(b).)  Each of the Italian counsel would be personally bound by the order, and the information would not be available to others within their respective firms.  In this way, defendants' information would be protected, and at the same time, Infosint could receive the legal counsel it needs to conduct this case.   Defendants' proposal, on the other hand, would

allow Infosint's Italian counsel, as well as defendants' inside counsel, access only to the lower tier of designated information.

The rationale for Infosint's proposed protective order derives from the nature of Infosint itself.  Infosint is a small Swiss company.  It does not manufacture products, and it does not compete with defendants in the marketplace.  It has no in-house legal staff, and it has no in-house patent function.  All its legal and patent work is carried out by outside counsel.  In particular, it relies for legal advice on the well-known Italian firm of Studio Legale Nodari & Associati of Milan, Italy.  Specifically, it relies on two lawyers in that firm, Mr. Stefano de Bosio and Mr. Paolo Nodari.  (Declaration of  Stefano de Bosio, attached hereto as Exhibit B.)  For patent issues, it relies on Dr. Gianfranco Dragotti of the Italian patent firm of Dragotti & Associati, also of Milan.  (Declaration of Gianfranco Dragotti, attached hereto as Exhibit C.)  Not to allow Infosint's Italian counsel full access to discovery would impose an undue hardship on Infosint in conducting this litigation.

Furthermore, Infosint's proposal would provide defendants much more information than they would have under defendants' scheme.  Infosint's proposal would permit both its outside trial counsel, Kirkland & Ellis LLP, and its identified in-house lawyers, Mr. Charles Ryan, Mr. John Meidahl Petersen, and Mr. Thomas Kirkback, to review all information provided by Infosint, notwithstanding that under defendants' proposal they would have access only to information within the "lower tier."

In the meet and confer conference prior to filing of this motion, defendants offered a modification to their earlier proposal.  They adhered to their insistence on two tiers, but offered to allow Mr. Nodari to have access to information within the "upper" tier.  Although this proposal goes part way towards meeting Infosint's concerns, it is not sufficient.  First, Mr. de

Bosio, Mr. Nodari's colleague, is primarily involved in advising Infosint.  (de Bosio dec., ¶4.)

Moreover, neither Mr. Nodari nor Mr. de Bosio is technically trained, unlike Dr. Dragotti.

Neither can advise Infosint effectively with respect to the technical patent issues.  Second,

defendants offer no valid rationale for including Mr. Nodari but excluding his colleague, Mr. de

Bosio, when both are involved in advising Infosint.

## ARGUMENT

It is well accepted that safeguards are generally necessary when proprietary technical

information is disclosed during discovery.  However, the need for safeguards must be balanced

against a party's right to counsel of its choice and full disclosure to that counsel.  Where a party

seeks a protective order restricting the scope of discovery of technical, proprietary information,

the court must weigh the interests in full disclosure of relevant information against the

reasonable protection from economic injury which might ensue from inadvertent disclosure of

the proprietary information.  *See Motorola, Inc. v. Interdigital Tech. Corp.*, No. Civ.A. 93-488-

LON, 1994 U.S.Dist. Lexis 20714, at *2 (D.Del. 1994).  In striking this balance, courts consider

(1) whether the person receiving the confidential information is involved in competitive

decision-making or scientific research relating to the subject matter of the patent, (2) the risk of

inadvertent disclosure of proprietary information, (3) the hardship imposed by the restriction, (4)

the timing of the remedy, and (5) the scope of the remedy.  *Id.*, at *8-*19.

Factors (4) and (5) above do not apply here because the only substantive provision of the

protective order in dispute pertains to access to confidential information.  The first two factors

are often considered together.  Where the recipient of the confidential information is acting as

counsel for a party, the determinative factor is whether the counsel is involved in competitive

decision-making.  *See U.S. Steel Corp v. United States*, 730 F.2d 1465, 1468 n.3 (Fed. Cir.

1984).  *See also Amgen, Inc. v. Elanex Pharms., Inc.,* 160 F.R.D. 134, 138-39 (W.D.Wa 1994); *Glaxo, Inc. v. Genpharm Pharms., Inc.*, 796 F.Supp 872 (E.D.N.C. 1992); *Carpenter Tech. Corp v. Armco, Inc.,* 132 F.R.D. 24, 27 (E.D.Pa 1990).  The balance of all relevant factors weighs heavily in favor of allowing Infosint's outside Italian counsel access to confidential information.

> **A.    Infosint's Outside Italian Counsel Are Not Involved in Competitive Decision-Making**

A crucial factor in evaluating the risk of disclosure is whether counsel who has access to the other side's confidential information is involved in "competitive decision-making";  that is, advising on decisions about pricing or product design made in light of similar or corresponding information about a competitor.  *U.S. Steel*, 730 F.2d at 1468 n.3 (Fed. Cir. 1984);  *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992).  Infosint's Italian counsel, Mr. de Bosio, does not engage in competitive decision-making for Infosint.  Instead, Mr. de Bosio and Mr. Nodari advise Infosint on commercial and corporate legal matters.  (de Bosio dec., ¶4.)  Dr. Dragotti advises Infosint on patent matters.  (Dragotti dec., ¶6.)  None of these individuals is an officer or employee of Infosint, and none of them is involved in business decisions regarding competitors of Infosint.  (de Bosio dec., ¶5; Dragotti dec., ¶8.)

> **B.    Infosint's Ability To Proceed With Its Infringement Claim And Defend Against Defendants' Counterclaims Would Be Impaired If Its Italian Representatives Are Not Allowed Access To Confidential Information**

Courts have also considered the hardships a protective order may impose in deciding who should have access to confidential information.  *See Brown Bag*, 960 F.2d at 1471.  Mr. de Bosio and Mr. Nodari have long represented Infosint in legal issues and in litigation.  (de Bosio dec., ¶4.)  In addition, together with Mr. Nodari, Mr. de Bosio is involved in major decisions regarding this lawsuit, such as potential settlement.  For example, during the settlement conference with this court in January, Mr. Nodari appeared on Infosint's behalf with authority to

bind Infosint in any settlement agreement.  Although a settlement was not reached, Mr. Nodari's

consultation with Infosint's trial counsel was essential in staking out Infosint's position during

the conference.  Since Mr. Nodari and Mr. de Bosio have the trust of Infosint for providing

direction in the prosecution and resolution of this case, it is critical that they have access to the

relevant information so that they can provide informed advice.

Dr. Dragotti, Infosint's European patent attorney, likewise has an important role in

advising Infosint.  This case is highly technical, and Dr. Dragotti's technical and patent

background, which Mr. Nodari and Mr. De Bosio do not have, allow him to understand the

detailed technical issues and advise Infosint accordingly.

### C. Defendants Have Offered no Valid Reason for their Contention that Infosint's Italian Counsel should not be Granted Access to All of Defendants' Confidential Information

Defendants have offered no valid reason for their contention that Infosint's Italian outside

counsel should not be granted access to defendant's confidential information.  Mr. De Bosio is a

respected member of the Italian bar.  As an Italian lawyer, he is required to maintain confidences

and abide by ethical rules.  He has acknowledged that obligation in this case.  (de Bosio dec.,

¶6.)  Similarly, Dr. Dragotti is a widely known and respected member of the Italian and

European patent bars (he is a member of the International Federation of Intellectual Property

Attorneys and of the International Association for the Protection of Intellectual Property, and

since 2004 he is the President of "Collegio Italiano dei Consulenti in Proprietà Industriale").  He

likewise understands that professional and ethical obligations demand that he abide by the

provisions of the Protective Order.  (Dragotti dec., ¶¶9-10.)

Defendants have indicated that their objection to Mr. de Bosio is based on their desire to

take his deposition.  This desire is not a legitimate reason to interfere with Infosint's right to be

assisted by its long-time counsel.  Defendants cannot articulate any reason that their interest in

taking discovery is inconsistent with Mr. de Bosio having access to information produced by defendants in discovery so that he may be able to effectively advise Infosint.

Defendants' objection to Dr. Dragotti is that his firm is involved in prosecuting patent applications for Infosint. Dr. Dragotti, however, was not substantively involved in the prosecution of the applications leading to the patents in suit, nor is he personally involved in the prosecution of any pending applications related to the patents in suit. (Dragotti dec., ¶7.) Accordingly, defendants' expression of fear that their confidential information may be compromised by its disclosure to Dr. Dragotti is without basis.

### CONCLUSION

The parties have agreed that (1) a Protective Order should govern the exchange of confidential information between the parties and (2) U.S. trial counsel should have access under the Protective Order. Because the balance of the parties' interests on these issue favors allowing Infosint's Italian counsel access to confidential information as well, Infosint respectfully requests that this Court enter its version of the Protective Order.

Dated: April 2, 2007

s/ James Galbraith
_____
James Galbraith (JG-4451)
Maria Luisa Palmese (MLP-5855)
Melissa Alegre (MA-0122)
KENYON & KENYON LLP
One Broadway
New York, NY 10004-1007
212.425.7200

*Attorneys for plaintiff Infosint S.A.*

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| INFOSINT S.A., <br><br> Plaintiff, <br><br> -against - <br><br> H. LUNDBECK A/S, LUNDBECK, INC., and FOREST LABORATORIES, INC., <br><br> Defendants. | Case No.:    06 CV 2869 (LAK) (RLE) <br><br> ECF Case |

**PROTECTIVE ORDER**

Pursuant to Federal Rule of Civil Procedure 26(c), the Court finds that good cause exists for entry of a protective order to prevent unauthorized disclosure and use of trade secrets and other confidential or proprietary information belonging to plaintiff Infosint S.A. ("Infosint") and Defendants and Counterclaim Plaintiffs H. Lundbeck A/S, Lundbeck, Inc., and Forest Laboratories, Inc. (hereinafter individually referred to as a "Party" or collectively as "the Parties") during and after the course of this litigation.  Accordingly, IT IS HEREBY ORDERED THAT:

1.    The terms "Confidential Material" shall include all information, documents and other materials revealed or disclosed during the proceedings and trial of the above matter that are designated as Confidential Material in the manner set forth in paragraphs 3, 4 and 5 of this Order.  Material shall be designated as Confidential Material only when the designating Party has a good-faith belief that the material contains trade secrets or other proprietary information that can be the subject of protection under Fed. R. Civ. P. 26(c), and that such information is not (1) public information or (2) already known to the receiving Party and not the subject of an obligation of secrecy to the designating Party.  Such designation shall, without more, subject the designated material to the provisions of this Protective Order, and all such material shall be protected, used, handled and disposed of strictly in accordance with the provisions of this Order.

2.      Except as specifically authorized by this Court, Confidential Material shall not be disclosed or revealed to anyone not authorized by this Order to receive such material and any person receiving such information shall use it solely for the purpose of preparing for or conducting this litigation.  All persons to whom Confidential Material is disclosed shall be informed of and made aware of the terms of this Protective Order.

3.      Subject to the provisions of paragraphs 1 and 2 of this Order, any document produced by a Party in this litigation may be designated as Confidential Material  by marking "CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER" on the face of the document prior to or at the time of production.  Such a designation shall mean that a Party claims in good faith that the document contains or discloses information relating to, referencing or pertaining to trade secrets or other confidential research, development or commercial information within the meaning of Federal Rule of Civil Procedure 26(c)(7).

4.      Subject to the provisions of paragraphs 1 and 2 of this Order, counsel for a Party may designate any portion of any deposition testimony as Confidential Material.  The counsel desiring to designate any portion of a deposition as Confidential Material may do so on the record while the deposition is being taken.  Alternatively, the transcript of the deposition (or of any other testimony), or any portion thereof, may be subsequently designated as containing Confidential Material in accordance with this Order by notifying the opposing Party in writing, within thirty (30) calendar days of receipt of the transcript of the specific pages and lines of the transcript which contain Confidential Material.  All such transcripts shall be treated as subject to this Protective Order until a time thirty (30) calendar days after a transcript of the deposition is received.  Any portion of any deposition testimony that is not designated in accordance with this paragraph shall not be entitled to the protection afforded under this Protective Order.

5.      Except upon the prior written consent of the producing Party, or upon further Order of this Court, Confidential Material shall be treated strictly in accordance with the

provisions of this Protective Order and may be used or disclosed only as specified in this Protective Order.

6.      Access to Confidential Material shall be limited to:

(a)  Outside counsel for the respective Parties to this litigation who have entered an appearance in this litigation and the secretarial, clerical, paralegal and other supporting personnel of said outside counsel;

(b)  Outside Italian counsel for Infosint S.A.: Stefano de Bosio, Paolo Nodari, and Gianfranco Dragotti and the secretarial, clerical, paralegal and other supporting personnel reporting to them;

(c)  Charles Ryan, John Meidahl Petersen, and Thomas Kirkback, in-house counsel for Forest Laboratories and H. Lundbeck A/S and the secretarial, clerical, paralegal and other supporting personnel reporting to them;

(d)  Experts or consultants (and their employees or clerical assistants) who are not employees of any Party, and who are retained or otherwise consulted by outside counsel to assist in the preparation and trial of this litigation.

(e)  Court personnel in the conduct of their official duties and the trier of fact;

(f)  Qualified persons taking testimony, such as court reporters and videographers, and necessary stenographic and clerical personnel reporting to them;

(g)  Duplicating services and auxiliary services of like nature, routinely engaged by outside counsel;

(h)  Litigation support services retained by Parties to prepare document databases, trial exhibits and the like;  and

(i) Translators who agree to be bound by this protective order and sign the undertaking attached hereto, and secretarial and other support personnel employed by them.

7.      Before disclosing Confidential Material to any person under paragraph 6(b-d), the Party seeking to make such disclosure shall first give ten (10) business days prior written notice to counsel for the opposing Party of the name and address of the person to whom the disclosure is to be made, including a copy of the Undertaking attached hereto as Exhibit A filled out and signed by such person, and a current resume disclosing such person's prior or present relationship, if any, with the Parties.  If the opposing Party has a good-faith basis for believing it would be harmed by the proposed disclosure, it may object in writing to such disclosure within ten (10) business days after receipt of the notice.  In the event of an objection, the Parties shall promptly confer to attempt to resolve the concerns giving rise to the objection.  If the Parties are unable to reach an agreement regarding such disclosure, the Party objecting to the disclosure may, within ten (10) business days, request this Court to issue an order barring the disclosure. No disclosure shall be made pending the ruling and Order of the Court.  The Court may impose such restrictions as it deems appropriate on such disclosure as a condition of issuing such Order.

8.      Confidential Material shall under no circumstances be disclosed to any person under paragraph 6(b-d) unless and until such person has executed the Undertaking attached to this Order as Exhibit A**.**

9.      Confidential Material may be disclosed to a witness in the course of his or her deposition, hearing or trial testimony in this action who is not authorized to receive Confidential Material under the terms of this Protective Order, so long as such examination concerns Confidential Material that the witness authored or previously had access to or knowledge of, as demonstrated by the Confidential Material itself or by foundation testimony during a deposition, hearing or trial.  This Protective Order shall not prevent counsel from examining a witness in a good-faith effort to determine whether he or she authored or previously had access to Confidential Material.

10.     Confidential Material may be used or submitted to the Court in connection with any filing or proceeding in this litigation, but the Party using such Confidential Material shall cause it to be filed separately under seal with the Clerk of the Court.  To the extent that any papers that contain Confidential Material are submitted to or filed with the Court, they shall be submitted or filed in a sealed envelope bearing a legend in substantially the following form clearly written on the face of the envelope under the name and case number of this litigation:

<u>CONFIDENTIAL -- SUBJECT TO PROTECTIVE ORDER</u>

The contents of this envelope are subject to a Protective Order entered by the Court in the above-captioned case, shall be treated as confidential and must not be shown to any person except as authorized by an order of the Court.

11.     Confidential Material may be used in the course of the trial of this action, subject to such restrictions as imposed by the Court.

12.     In the event any of the Parties: (a) is subpoenaed in another action, or (b) is served with a demand in another action to which it is a Party, or (c) is served with any other legal process by a person not a Party to this litigation, and is requested to produce or otherwise disclose Confidential Material that was so designated by another Party, the Party subpoenaed or served as referred to in this paragraph shall object to production of the Confidential Material, and give prompt written notice to producing Party and notify the Party seeking the discovery of the existence of this Protective Order.  Nothing in this Order shall be construed as requiring the Party covered by this Protective Order to challenge or appeal any order requiring production of Confidential Material covered by this Protective Order, to subject itself to any penalties for noncompliance with any legal process or order, or to seek any relief from this Court.

13.     Nothing in this Protective Order shall be construed as constituting a finding that any designated Confidential Material actually constitutes or contains proprietary or confidential information or trade secrets within the meaning of Fed. R. Civ. P. 26(c)(7).  There shall be no

obligation to challenge a Confidential Material designation when made and failure to do so shall not preclude a subsequent challenge.  If a Party objects to the designation of any material as Confidential Material, counsel for the Parties shall confer and seek to resolve the issue.  If the issue cannot be resolved, the objecting Party may apply to this Court for a ruling that the information or material shall not be so designated.  The burden shall then be on the Party designating the information as Confidential Material to establish that the material constitutes or contains proprietary or confidential information or trade secrets.  If such a showing is not made to the satisfaction of the Court, the information shall no longer be treated as Confidential Information.

14.     Nothing in this Protective Order shall bar or otherwise restrict any counsel representing a Party in this action from rendering advice to his or her client with respect to this litigation.  In the course of doing so, counsel may generally refer to or rely upon his or her conclusions or opinions formed upon examination of Confidential Material, but shall not disclose the content of Confidential Material to persons not authorized to receive such material pursuant to this Protective Order.

15.     If any documents or information which a Party believes it is entitled to maintain as Confidential Material are inadvertently produced without the appropriate designation, assertion of such proprietary status by the producing Party shall be made as soon as practical (and no later than 10 business days) after learning of the inadvertent production.  Such inadvertent production shall not be deemed a waiver of any claim of confidentiality, but the Party to which such inadvertent production was made shall not be liable for or deemed in violation of this protective order for any use or disclosure of the information between the time of its inadvertent production and the time the proprietary status is asserted.  The receiving Party shall use good-faith efforts to attempt to recover such inadvertently produced material from any unqualified person who may have been given access to it prior to the assertion by the producing Party that such material was Confidential Material, or shall attempt to have the unqualified

person become qualified under this protective order.  However, no liability shall accrue to the receiving Party if such attempted recovery or qualification is not successful.

16.     Within thirty (30) days of the final conclusion of this litigation, including any appeals, all persons to whom Confidential Material has been disclosed shall, without demand, either (a) destroy, or (b) return to the Party that originally produced it, all Confidential Material (and all copies of such material) and all other documents containing information taken from such material, except that each Party's outside counsel identified in subparagraphs 6(a) through 6(c) may retain one archival copy of pleadings, briefs, motions, deposition transcripts and exhibits thereto, and the like, that include such material.  All recipients of Confidential Material shall then certify in writing to counsel for the producing Party that they have complied with the provisions of this paragraph.

17.     Upon the final conclusion of this litigation:

        (a)  any Confidential Material produced hereunder that has been submitted for identification or into evidence at any hearing or trial in this litigation may be requested to be withdrawn by counsel for the Party asserting the claim of confidentiality for the Confidential Material; and

        (b)  the Clerk is authorized to deliver said Confidential Material to said counsel, absent any contrary Order of this Court.

18.     Nothing in this Order shall be deemed a waiver of any right any Party otherwise might have under the Federal Rules of Civil Procedure or of the doctrines of attorney-client privilege or attorney work product.

19.     If information subject to a claim of attorney-client privilege or work-product immunity is inadvertently or mistakenly produced, such production shall in no way prejudice or constitute a waiver of, or estoppel as to, any claim of privilege or work-product immunity for such information.  If a Party has inadvertently or mistakenly produced information subject to a

claim of immunity or privilege, the producing Party may request the return of such information from the receiving Party, provided the producing Party informs the receiving Party within ten (10) business days of the discovery of the disclosure of such information.  The receiving Party shall return all copies of such information and any extracts therefrom within five (5) business days of receiving such a request.  The receiving Party shall further destroy all notes or summaries referring or relating to any such inadvertently or mistakenly produced information. The receiving Party may move the Court for an Order compelling production of such information but may not rely on the inadvertent production of such information as a basis for seeking its production.

20.     Counsel identified under subparagraphs 6(a) through 6(c) who view confidential Material with the "Outside Counsel Eyes Only" designation shall be restricted from prosecuting patent applications for a Party for the pendency of this litigation, and for two years after its conclusion, concerning 5-carboxyphthalide and/or citalopram and/or processes for making them.

21.     This Protective Order shall survive the final conclusion of this litigation and shall continue in full force and effect and the Court shall retain jurisdiction over the Parties to enforce this Protective Order.

22.     This Protective Order may be modified or amended by further order of the Court for good cause shown.

23.     This order shall not prevent any Party from applying to the Court for further or additional protective orders.

Dated:                                  _____
                                        Hon. Lewis A. Kaplan
                                        United States District Judge

                                        Hon. Ronald L. Ellis
                                        United States Magistrate Judge

8

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| INFOSINT S.A., | |
| Plaintiff, | Case No.:      06 CV 2869 (LAK) |
| -against - | ECF Case |
| H. LUNDBECK A/S, LUNDBECK, INC., and FOREST LABORATORIES, INC., | |
| Defendants. | |

**UNDERTAKING PURSUANT TO**
**PROTECTIVE ORDER**

I, _____, residing at _____ _____, have been given a copy of the Protective Order entered into in the above captioned litigation and I have read the same.  I agree that any Confidential Material which I gain access to will be protected by me and used by me solely for the purpose of this civil action and as is provided in said Protective Order.  I agree to be subject to the jurisdiction of this Court with respect to any dispute relating to my obligations under said Order Protective Order.

Date _____          (Signed) _____

# EXHIBIT B

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

INFOSINT S.A.,

Plaintiff,

-against -

H. LUNDBECK A/S, LUNDBECK, INC.,
and FOREST LABORATORIES, INC.,

Defendants.

Case No.:    06 CV 2869 (LAK)

ECF Case

**DECLARATION OF STEFANO de BOSIO**

1.      I am a partner at the law firm Studio Legale Nodari & Associati in Milan, Italy.

2.      I am currently a member in good standing of the Italian bar. I earned a law degree

from the University of Milan in 1988.   Since then, I have been employed at Studio Legale Nodari

& Associati in Milan, where I became partner in 1997. I was admitted to the Italian bar in 1992

and to the Italian Superior Courts (Corte di Cassazione, Consiglio di Stato, Corte Costituzionale)

in 2004 . I have been engaged in the practice of law for 19 years. I am the vice-chairman of the

well-known network of international law firms, Interleges.

3.      In my practice, I advise clients on a variety of legal matters, including commercial

law and litigation matters. With respect to technical aspects in patent matters, I rely on the opinion

of patent attorneys, such as Dr. Gianfranco Dragotti.

4.      I have been advising Infosint S.A. for over ten years on various commercial and

corporate legal matters. Infosint relies on my firm's advice for such matters. Mr. Paolo Nodari

and I are both involved in advising Infosint, but I am the lawyer at Studio Legale Nodari &

Associati who is principally involved in the representation of that company. I believe that my

being able to review the evidence in this case and to discuss it freely with U.S. counsel is critical to my advising Infosint with respect to the conduct and possible resolution of the litigation.

5.      Although I advise Infosint on legal matters,  I am not an employee or officer of Infosint, nor am I involved in business decisions regarding competitors of Infosint.

6.      As a member of the Italian bar, I am bound by a duty which requires attorneys to comply with a body of ethics rules, including a duty of confidentiality, good faith and courtesy in the course of their practice of the law, which apply to both their dealings with clients and their dealings with other practitioners in the profession, regardless of  the jurisdictions to which they are admitted and the clients they are representing.

7.      I have read and understand the obligations imposed by Infosint's proposed protective order and undertaking, which are attached hereto as Exhibit A.   I agree to execute the undertaking and be subject to the jurisdiction of this court with respect to any dispute relating to it.

8.      I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated: April 2, 2007

_____
Stefano de Bosio

# EXHIBIT C

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

INFOSINT S.A.,

               Plaintiff,

    -against -

H. LUNDBECK A/S, LUNDBECK, INC.,
and FOREST LABORATORIES, INC.,

              Defendants.

Case No.:    06 CV 2869 (LAK)

ECF Case

## DECLARATION OF GIANFRANCO DRAGOTTI

1.    I am a patent attorney and partner at the patent firm Dragotti & Associati in Milan, Italy.

2.    I have a doctorate degree in chemical engineering from the University of Rome, which I received in 1965.  I applied for and was admitted to the Italian Intellectual Property Bar in 1983 [1], and to the European Patent Bar in 1979.  I worked as a patent attorney  at Barzanò & Zanardo from 1967 to 1978, and in 1978 founded SAIC BREVETTI.  In 1998, SAIC BREVETTI became Dragotti & Associati.

3.    I am currently a member in good standing of the Italian Intellectual Property Bar and the European Patent Bar.  I am registered to practice before the Italian Patent Office, the European Patent Office, the World Intellectual Property Organization, and the Office for the Harmonization of the Internal Market.

4.    I am a member of several international intellectual property organizations, including EPI (the European Patent Attorneys Institute), FICPI (the International Federation of  Industrial

---

[1] In 1983 the Italian Intellectual Property Bar was established by law

Property Attorneys), AIPPI (The International Association for the Protection of Intellectual Property), and LES (Licensing Executive Society). Since 2004, I am the President of "Collegio Italiano dei Consulenti in Proprietà Industriale" (Italian Association of Industrial Property Attorneys), an office to which I was elected in 2004.

5.      As an Italian and European patent attorney I have advised clients on patent matters, including prosecution and litigation for more than 35 years.   I have also served numerous times as a party or court appointed patent/technical expert in patent litigations in Italy. At the present time I am attending to eight patent litigations  as a court expert, appointed by the Italian Courts of Milano, Varese, Venezia, Bologna and Padova.  As a party expert,  I am presently involved in ten patent litigations.

6.      I have been advising Infosint S.A. and related companies since 2000 on various patent matters.  Infosint relies on my scientific and legal expertise with respect to patent matters. Infosint and I believe that my being able to review the evidence in this case and to discuss it freely with U.S. counsel is critical to my advising Infosint with respect to the conduct and possible resolution of the litigation.

7.      Although my firm has been involved in drafting and prosecuting patent applications for Infosint, I have personally never been substantively involved in the prosecution of the patents that are asserted in the above-mentioned litigation or any pending or foreign applications claiming the same priority.  I will not have any involvement in such prosecution in the future.

8.      Although I advise Infosint on patent matters, I am not an employee or officer of Infosint, nor am I involved in its business decisions regarding its competitors.

9.      As a member of the Italian Intellectual Property bar and the European Patent Bar as well as of EPI and FICPI, I am bound by a duty which requires patent attorneys to comply with a

body of ethics rules, including a duty of confidentiality, good faith and courtesy in the course of their practice, which apply both to their dealings with clients,  and their dealings with other practitioners in the profession, regardless of  the jurisdiction they are admitted to and the clients they are representing.

      10.    I have read and understand the obligations imposed by Infosint's proposed protective order and undertaking, which are attached hereto as Exhibit A.   I agree to execute the undertaking and be subject to the jurisdiction of this court with respect to any dispute relating to it.

      11.    I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Dated:  April 2, 2007          _____

                                        Gianfranco Dragotti