KIRKLAND & ELLIS LLP
Citigroup Center
153 East 53rd Street
New York, New York 10022
Telephone:     (212) 446-4800
Facsimile:      (212) 446-4900

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| INFOSINT S.A., <br><br> Plaintiff, <br><br> - against - <br><br> H. LUNDBECK A/S, LUNDBECK, INC. and FOREST LABORATORIES, INC., <br><br> Defendants. | Case No.:     06 CV 2869 (LAK) (RLE) <br><br> ECF Case |

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO
## PLAINTIFF'S MOTION FOR ENTRY OF A PROTECTIVE ORDER

# TABLE OF CONTENTS

INTRODUCTION ...................................................................................................1

ARGUMENT ........................................................................................................4

I.    This Court May Grant A Protective Order Restricting Access To Confidential Research, Development Or Commercial Information .......................4

    A.    In Determining Whether A Protective Order Is Appropriate, The Court Balances The Interests In Full Disclosure Of Relevant Information And Reasonable Protection From Economic Injury...............4

    B.    Courts Generally Refuse To Grant Attorneys Who Are Involved In Ongoing Prosecution Of Patents For The Receiving Party Access To The Producing Party's Highly Sensitive Material.........................5

    C.    Courts Generally Refuse To Grant Fact Witnesses Access To Confidential Material ...............................................................6

II.    Defendants' Highly Sensitive Material Should Not Be Disclosed To Dr. Dragotti ...........................................................................................6

    A.    Dr. Dragotti Is Involved In Competitive Decision Making For Infosint And He And His Firm Are Involved In Prosecution Of Patents For Infosint ...........................................................6

    B.    Access To Of Defendants' Highly Sensitive Material By Dr. Dragotti Would Lead To A High Risk Of Inadvertent Disclosure .............7

    C.    Infosint Has Not Demonstrated Any Need For Dr. Dragotti To Have Access To Defendants' Highly Sensitive Material .....................8

III.    Defendants' Highly Sensitive Material Should Not Be Disclosed To Mr. de Bosio ...........................................................................................9

    A.    Mr. de Bosio Is Involved In Competitive Decision Making For Infosint And Any Perceived Need By Infosint For Its Italian Counsel To Access Defendants' Most Highly Sensitive Material Will Be Met By Mr. Nodari..........................................................9

    B.    Mr. de Bosio Is Likely To Be An Important Fact Witness In This Action....................................................................................10

**TABLE OF CONTENTS (CONT'D)**

Page

C.   Infosint Has Not Demonstrated Any Need For Mr. de Bosio To
Have Access To Defendants' Highly Sensitive Material ...........................10

IV.   Defendants' Proposed Protective Order Does Not Deny Infosint Its Choice
Of Counsel ..............................................................................................................11

CONCLUSION.......................................................................................................................12

## **TABLE OF AUTHORITIES**

**Cases**

*Amgen, Inc. v. Elanex Pharms., Inc.,*
    160 F.R.D. 134 (W.D. Wash. 1994) ................................................................. 12

*Brown Bag Software v. Symantec Corp,*
    960 F.2d 1465 (9th Cir. 1992) ....................................................................... 10

*Carpenter Tech. Corp. v. Armco, Inc.,*
    132 F.R.D. 24 (E.D. Pa. 1990) ....................................................................... 11

*Commissariat A L'Energie Atomique v. Dell Computer Corp.,*
    No. Civ. A. 03-484-KAJ, 2004 WL 1196965 (D. Del. May 25, 2004) .............. 5

*Davis v. AT&T Corp.,*
    No. 98-CV-0189S(H),
    1998 WL 912012 (W.D.N.Y. Dec. 23, 1998) .................................................. 4

*Glaxo Inc. v. Genpharm Pharms., Inc.,*
    796 F. Supp. 872 (E.D.N.C. 1992) ................................................................. 12

*Mikohn Gaming Corp. v. Acres Gaming Inc.,*
    No. CV-S-97-1383 HDM (LRL), 1998 WL 1059557 (D. Nev. April 15, 1998) .............. 6

*Motorola, Inc. v. Interdigital Tech. Corp.,*
    No. 93-488-LON, 1994 WL 16189689 (D. Del. Dec. 19, 1994) ........................ 5, 7, 8, 10

*Quotron Sys., Inc. v. Automatic Data Processing, Inc.,*
    141 F.R.D. 37 (S.D.N.Y. 1992) ....................................................................... 5

*Safe Flight Instrument Corp. v. Sundstrand Data Control Inc.,*
    682 F. Supp. 20 (D. Del. 1988) ....................................................................... 4

*Sullivan Mktg. Inc. v. Valassis Commc'n. Inc.,*
    No. 93 CIV. 6350 (PKL), 1994 WL 177795 (S.D.N.Y. May 5, 1994) .............. 7

*U.S. Steel Corp. v. United States,*
    730 F.2d 1465 (Fed. Cir. 1984) ....................................................................... 5, 10

**Rules**

Fed. R. Civ. P. 26(c)(7)....................................................................................... 4

## INTRODUCTION

Defendants H. Lundbeck A/S, Lundbeck, Inc. and Forest Laboratories, Inc. ("Defendants") respectfully submit this Memorandum In Opposition To Plaintiff's Motion For Entry Of A Protective Order and attach hereto Defendants' Proposed Protective Order (Exhibit A).

Infosint's proposed protective order does not provide adequate safeguards for protection of Defendants' highly sensitive material. Specifically, Infosint proposes a "one-tier" protective order under which all material produced by Defendants, regardless of the nature of the confidential information contained in the that material or its commercial sensitivity, would be disclosed to all of Infosint's designated counsel, including its external Italian counsel. As explained below, this broad disclosure of Defendants' most highly sensitive material to certain of Infosint's external Italian counsel is likely to prejudice Defendants and could potentially cause them commercial harm.

In contrast and without any prejudice to Plaintiff, Defendants propose a "two-tier" protective order under which the parties will be permitted to designate certain highly sensitive material as "outside counsel eyes only" with its disclosure limited to the parties' external U.S. counsel of record. This category would presumptively" be limited to pending patent applications, current manufacturing processes, and ongoing research and development concerning 5-carboxyphthalide and/or citalopram and/or processes for making them. Accordingly, under Defendants' proposal, Infosint's outside Italian counsel would have access to the vast majority of documents and information produced by Defendants. However, they would not be permitted to access material that is particularly commercially sensitive to Defendants, or

which could provide Infosint with an unfair commercial advantage in the development of new products and processes, or in the prosecution of its pending or future patent applications.

The principal issue on this motion is whether two of Infosint's Italian counsel, Dr. Gianfranco Dragotti of Dragotti & Associati of Milan, Italy, and Mr. Stefano de Bosio of Studio Legale Nodari & Associati, also of Milan, Italy, should be granted access to Defendants' most highly sensitive material.  Defendants have already offered to provide such access to Infosint's third designated outside Italian counsel, Mr. Paolo Nodari of Studio Legale Nodari & Associati.[1] As a result of Mr. Nodari's access, Plaintiff will have full counsel on every document in the case from both U.S. and Italian counsel.  Further access is unnecessary and unwarranted given the potential prejudice to Defendants.

Infosint's brief and Dr. Dragotti's declaration make it clear that Dr. Dragotti is involved in competitive decision making for Infosint.  Further, Dr. Dragotti is the principal of Dragotti & Associati, a firm that is involved in the ongoing prosecution of Infosint's patent applications relating to the technology at issue in this litigation, including a continuation application of one of the patents-in-suit.  Under these circumstances, granting Dr. Dragotti access to Defendants' most highly sensitive material, including pending patent applications, current manufacturing processes, and ongoing research and development concerning 5-carboxyphthalide and/or citalopram and/or the processes for making them, would lead to a high risk of inadvertent

---

[1]    Defendants have agreed to grant Mr. Nodari access to their highly sensitive material on the condition that Mr. Nodari enter into an appropriate confidentiality agreement which would, *inter alia*, subject him to the jurisdiction of this Court in the event of a breach.  Infosint has yet to indicate Mr. Nodari's agreement to enter into such an agreement.

disclosure and use of that material, and would prejudice and potentially harm Defendants' commercial interests.

Infosint's brief further makes clear that Mr. de Bosio is also heavily involved in competitive decision making for Infosint. Moreover, Mr. de Bosio is likely to be called as a fact witness in relation to Defendants' defenses of "license" and "arbitration and award," based on his representation of Infosint's predecessors in interest, Syrio S.A. and Norpharma S.p.A., in prior negotiations of an intellectual property license agreement and a subsequent arbitration relating to that agreement. Under these circumstances, it would be inappropriate for Mr. de Bosio to be granted access to Defendants' most highly sensitive material.

Infosint has failed to explain how restricting access to Defendants' highly sensitive material to U.S. counsel of record and one Italian counsel could impose an undue hardship. First, Infosint has not explained why it could not properly conduct this litigation without the involvement of Dr. Dragotti and Mr. de Bosio.[2] Infosint has the services of U.S. counsel (as well as Mr. Nodari) who will have access to all material produced, and it is unclear why a Swiss company litigating in the United States needs to disclose Defendants' highly sensitive material to its Italian counsel. In any event, Defendants' proposed protective order does not foreclose Infosint from relying on the advice of Dr. Dragotti and Mr. de Bosio in conducting this litigation. Dr. Dragotti and Dr. de Bosio would have access to the vast majority of Defendants' documents and information and, in the event that it is necessary, Infosint's U.S. counsel and Mr. Nodari

---

[2]   Indeed, the same is true for Mr. Nodari. In the spirit of compromise, however, and to avoid the need for judicial intervention, Defendants offered access to Mr. Nodari as a compromise and have stood by that offer.

would be able to seek instructions from Dr. Dragotti and Mr. de Bosio regarding the issues raised

by Defendants' highly sensitive material without disclosing the substance of that material.

For these reasons, Infosint's motion for a protective order should be denied and

Defendants respectfully request that this Court enter the proposed alternative Protective Order

attached hereto at Exhibit A.

## ARGUMENT

**I.      This Court May Grant A Protective Order Restricting Access To Confidential Research, Development Or Commercial Information**

Under Fed. R. Civ. P. 26(c), this Court may issue an order "to protect a party or person

from annoyance, embarrassment, oppression, or undue burden or expense, including...that a

trade secret or other confidential research, development, or commercial information not be

revealed or be revealed only in a designated way." *See* Fed. R. Civ. P. 26(c)(7).

**A.      In Determining Whether A Protective Order Is Appropriate, The Court Balances The Interests In Full Disclosure Of Relevant Information And Reasonable Protection From Economic Injury**

Where a party seeks a protective order restricting the scope of discovery of technical,

proprietary information, the court should balance the interests in full disclosure of relevant

information and reasonable protection from economic injury. *Safe Flight Instrument Corp. v.*

*Sundstrand Data Control Inc.*, 682 F. Supp. 20, 23 (D. Del. 1988). The courts have generally

afforded fuller protection to technical, proprietary information than that extended to ordinary

business information. *Davis v. AT&T Corp.*, No. 98-CV-0189S(H), 1998 WL 912012, at *1

(W.D.N.Y. Dec. 23, 1998). Indeed, protective orders that limit access to certain documents and

information to litigation counsel and experts are commonly entered in litigation involving trade

secrets and other confidential research, development, or commercial information. *See, e.g., Quotron Sys., Inc. v. Automatic Data Processing, Inc.*, 141 F.R.D. 37, 40 (S.D.N.Y. 1992).

Whether or not counsel for a receiving party should be granted access to the producing party's highly sensitive material does not rest on whether that counsel is "in-house" or "external." *See Motorola, Inc. v. Interdigital Tech. Corp.*, No. 93-488-LON, 1994 WL 16189689, at *4 (D. Del. Dec. 19, 1994). Rather, the court looks at whether that counsel is in a position that creates a high risk of inadvertent disclosure and whether that counsel is involved in "competitive decision-making" for the receiving party. *Id.*; *see also, U.S. Steel Corp. v. United States*, 730 F.2d 1465, 1468, n.2 (Fed. Cir. 1984). "Competitive decision making" includes an attorney's involvement in "activities which define the scope and emphasis of a client's research and development efforts," including "[t]he process of prosecuting patent applications." *Motorola*, 1994 WL 16189689, at *4; *see also Commissariat A L'Energie Atomique v. Dell Computer Corp.*, No. Civ. A. 03-484-KAJ, 2004 WL 1196965, at *2 (D. Del. May 25, 2004).

**B.    Courts Generally Refuse To Grant Attorneys Who Are Involved In Ongoing Prosecution Of Patents For The Receiving Party Access To The Producing Party's Highly Sensitive Material**

Courts have recognized that the act of prosecuting patent applications is a key component of the "competitive decision making" for parties that are involved in research and development activities. *Motorola*, 1994 WL 16189689, at *4. Indeed, the courts have acknowledged the great risk of harm that might inure to a producing party if its highly sensitive material is viewed by the receiving party's attorneys involved in prosecuting patents on behalf of that party. *See id; see also, Mikohn Gaming Corp. v. Acres Gaming Inc.*, No. CV-S-97-1383 HDM (LRL), 1998 WL

1059557, at *3-4 (D. Nev. April 15, 1998) (disqualifying trial counsel that were also involved in the prosecution of related patent applications).

The exclusion of an attorney involved in competitive decision making, such as patent prosecution, generally applies to the entire firm of which the prosecuting attorney is a member. *See, e.g., Mikohn*, 1998 WL 1059557, at *3-4 (denying defendant's law firm access to plaintiff's confidential technical information during the course of patent infringement action); *see also Andrx Pharms, LLC v. GlaxoSmithKline, PLC*, 236 F.R.D. 583 (S.D. Fla. 2006) (denying prosecuting attorney access to opposing party's confidential information, despite attorney's willingness not to personally prosecute any patents relating to the drug substance in suit during or for two years after the litigation).

### C. Courts Generally Refuse To Grant Fact Witnesses Access To Confidential Material

In addition to restricting access to confidential information by the receiving party's patent prosecution attorneys, the courts have held that the fact that the attorney for the receiving party is likely to be called as a fact witness in a pending litigation is an additional ground to deny that attorney access to the opposing party's confidential material. *See, e.g. Andrx*, 236 F.R.D. at 587.

## II. Defendants' Highly Sensitive Material Should Not Be Disclosed To Dr. Dragotti

### A. Dr. Dragotti Is Involved In Competitive Decision Making For Infosint And He And His Firm Are Involved In Prosecution Of Patents For Infosint

Dr. Dragotti concedes that his firm, Dragotti & Associati, has been involved in drafting and prosecuting patent applications for Infosint.  (*See* Dragotti Decl. ¶ 7).  Their involvement includes the ongoing prosecution of a continuation of one of those patents-in-suit.  This in itself is grounds for denying Mr. Dragotti access to Defendants' highly sensitive material. *See Mikohn*, 1998 WL 1059557, at *4.

6

Despite Dr. Dragotti's equivocal statement that he has never been *substantively* involved in the prosecution of the patents that are asserted in this litigation (*see* Dragotti Decl. ¶ 7), he admits that he advises Infosint on "patent matters" (*see* Dragotti Decl. ¶ 6).   And, as the principal of the firm Dragotti & Associati, a firm with only 11 partners, it is inconceivable that Dr. Dragotti would be able to insulate himself entirely from future prosecution of patents for his client, Infosint, relating to the subject matter of the patents-in-suit. *See Id.*

Moreover, Dr. Dragotti is involved in "competitive decision making" for Infosint — Infosint has no in-house legal staff of its own and no in-house patent function (*see* Pl.'s Br. at 4), and "Infosint relies on [Dr. Dragotti's] scientific and legal expertise with respect to patent matters." Dr. Dragotti should, therefore, be excluded from accessing Defendants' most highly sensitive information. *See Motorola*, 1994 WL 16189689, at *4.

### B.    Access To Of Defendants' Highly Sensitive Material By Dr. Dragotti Would Lead To A High Risk Of Inadvertent Disclosure

Defendants appreciate that, as a member of the Intellectual Property Bar and European Patent Bar as well as of EPI and FICOPI, Dr. Dragotti is bound by ethical duties of confidentiality, good faith and courtesy in his practice (*See* Dragotti Decl. at ¶ 9), and Defendants do not intend to suggest that Dr. Dragotti would knowingly breach those duties. However, as this Court has recognized, the fact that a recipient of confidential information is bound by rules of professional responsibility, is not sufficient justification for granting that person access to confidential information, since there remains a risk of inadvertent use or disclosure of the information. *See Sullivan Mktg. Inc. v. Valassis Commc'n. Inc.*, No. 93 CIV. 6350 (PKL), 1994 WL 177795, at *2 (S.D.N.Y. May 5, 1994); *see also Andrx*, 236 F.R.D. at 586 (recognizing that "counsel might inadvertently use confidential information

7

obtained in the course of this litigation to shape advice regarding the scope of patent claims . . .

to the detriment of the opposing party, its competitor.")

Dr. Dragotti's exposure to Defendants' highly sensitive material would irreparably taint

him and it would be impossible for him to place this information out of his mind when providing

patent advice to Infosint. *See Motorola*, 1994 WL 16189689, at *5. The risk of harm to

Defendants under such circumstances would be great.

### C.    Infosint Has Not Demonstrated Any Need For Dr. Dragotti To Have Access To Defendants' Highly Sensitive Material

Infosint has not provided any reason why disclosure of Defendants' most highly sensitive

material to Dr. Dragotti is necessary.  Infosint simply suggests that Dr. Dragotti has an important

role in advising Infosint because of his "technical and patent background."  Yet, it is not clear

from the credentials set out in Dr. Dragotti's declaration that he has any particular expertise

relevant to the subject matter of the patents-in-suit.  Moreover, Infosint will presumably have one

or more technical expert witnesses assisting it with the technology related to the patents-in-suit.

Those experts will have access to *all* documents and information produced by Defendants.

Additionally, Dr. Dragotti will still have access to the vast majority of the documents and

information produced by Defendants.  Any suggestion that Infosint would be in any way

prejudiced or hampered by this restriction on disclosure to Dr. Dragotti is speculative at best.

**III.    Defendants' Highly Sensitive Material Should Not Be Disclosed To Mr. de Bosio**

     **A.    Mr. de Bosio Is Involved In Competitive Decision Making For Infosint And Any Perceived Need By Infosint For Its Italian Counsel To Access Defendants' Most Highly Sensitive Material Will Be Met By Mr. Nodari**

Infosint concedes that it does not manufacture products (*see* Pl.'s Br. at 4), and its principal "business" is the holding and assertion of patent rights against market participants.[3] Accordingly, the principal business decisions of Infosint relate to the acquisition and prosecution of patents, and strategic decisions regarding the assertion of those patents for financial gain. Under such circumstances, the principal business decisions of Infosint are likely to be made, or at least heavily influenced, by its legal advisors. Infosint concedes that "[i]t has no in-house legal staff, and it has no in-house patent function," and that it relies heavily on the advice of its outside counsel, particularly the Italian firm of Studio Legale Nodari & Associati, and more particularly Mr. Nodari and Mr. de Bosio. (*See* Pl.'s Br. at 4)  Accordingly, it is clear that Mr. Nodari and Mr. de Bosio are both involved in competitive decision making for Infosint.

     The fact that Mr. Nodari and Mr. de Bosio are involved in "competitive decision making" for Infosint is also confirmed by the fact that Mr. Nodari and Mr. de Bosio are "involved in major decisions regarding this lawsuit, such as potential settlement," (*see* Pl.'s Br. at 6) and that "Mr. Nodari appeared on Infosint's behalf with authority to bind Infosint in any settlement agreement." (*see* Pl.'s Br. at 6-7).

     Given that Mr. Nodari and Mr. de Bosio are both heavily involved in "competitive decision making" for Infosint, an objection by Defendants' to disclosing Defendants' highly

---

[3]    While Infosint might not compete with Defendants in the marketplace with products, its business of asserting patents in the field of technology in which Defendants' products sit, is inherently competitive to Defendants.

9

sensitive material to both Mr. de Bosio *and* Mr. Nodari is appropriate. *See U.S. Steel*, 730 F.2d at 1468 n.2; *Brown Bag Software v. Symantec Corp*, 960 F.2d 1465, 1470 (9th Cir. 1992); *Motorola*, 1994 WL 16189689, at *4. However, in the spirit of cooperation, Defendants have agreed to allow Infosint to provide access to that material to Mr. Nodari. Providing similar access to Mr. de Bosio would be redundant and unnecessary.

### B.   Mr. de Bosio Is Likely To Be An Important Fact Witness In This Action

At least two of the defenses and counterclaims raised in Defendants' Answer And Counterclaims relate to an Agreement On Purchase of IP Rights between H. Lundbeck A/S and one of Infosint's predecessors in interest, Syrio S.A on October 6, 1999 ("the Syrio/Lundbeck Agreement"). Mr. de Bosio was intimately involved in this agreement and the arbitration that resulted after the parties' first dispute regarding the patents-in-suit. As a result his involvement, Mr. de Bosio is likely to be an important fact witness in this matter, at least by way of deposition. Accordingly, Mr. de Bosio should be precluded from accessing Defendants' most highly sensitive material. *See, e.g. Andrx*, 236 F.R.D. at 587.

### C.   Infosint Has Not Demonstrated Any Need For Mr. de Bosio To Have Access To Defendants' Highly Sensitive Material

Infosint has failed to raise any legitimate reason why Mr. de Bosio needs to have access to Defendants' highly sensitive material. Infosint sole argument is that Mr. de Bosio is "involved in major decisions regarding this lawsuit, such as potential settlement," but, when Infosint was required to send an individual with authority to bind Infosint in any settlement agreement, Infosint sent Mr. Nodari, Mr. de Bosio's partner. Furthermore, like Dr. Dragotti, Mr. de Bosio will have access to the vast majority of the documents and information produced by Defendants.

Accordingly, Mr. de Bosio could continue to direct this litigation if necessary without access to Defendants' most highly sensitive material.

## IV.   Defendants' Proposed Protective Order Does Not Deny Infosint Its Choice Of Counsel

Infosint has suggested that it would be denied its choice of counsel if Dr. Dragotti and Mr. de Bosio were not permitted access to Defendants' highly sensitive material. (*See* Pl.'s Br. at 5)  This is not so.  As discussed above, Defendants' proposed protective order does not foreclose Infosint from relying on the advice of Dr. Dragotti and Mr. de Bosio.  Both would still have access to the vast majority of the material produced by Defendants and, with respect to the highly sensitive material, Mr. Nodari and Infosint's U.S. counsel would be able to seek instructions from Dr. Dragotti and Mr. de Bosio without disclosing the substance of that material.

The cases cited by Infosint in which access to confidential material was granted are either distinguishable, or support Defendants' position.  For example, in *Carpenter Tech. Corp. v. Armco, Inc.*, 132 F.R.D. 24, 25-27 (E.D. Pa. 1990) (Pl.'s Br. at 6), the in-house counsel to whom access was granted was neither (1) involved in prosecution of patents, (2) a potential fact witness in the litigation, nor (3) involved in other aspects of competitive decision making.  Moreover, the Court denied access to the plaintiff's second in-house attorney, stating "[plaintiff] has failed to satisfactorily explain why both [in-house attorneys] must have access to confidential information.  In fact, granting two persons access to such information, increases the risk of inadvertent disclosure of sensitive material."  Similarly, in this case, Defendants have already agreed to grant access to Defendants' highly sensitive material to Mr. Nodari and Infosint has failed to satisfactorily explain why both Mr. Nodari and Mr. de Bosio must have access to that

11

material.  *See also, Glaxo Inc. v. Genpharm Pharms., Inc.*, 796 F. Supp. 872 (E.D.N.C. 1992);

*and Amgen, Inc. v. Elanex Pharms., Inc.*, 160 F.R.D. 134, 138-139 (W.D. Wash. 1994) (Pl.'s Br.

at 6).

     In sum, the potential for prejudice and harm to Defendants if their highly sensitive

material is disclosed to Dr. Dragotti and Mr. de Bosio, greatly outweighs the minimal and

speculative prejudice to Infosint if access to Defendants' highly sensitive material is restricted.

## CONCLUSION

     For all of the foregoing reasons, Plaintiff's Motion For Entry Of A Protective Order

should be denied and Defendants respectfully request that this Court enter the proposed

alternative Protective Order attached hereto.


Dated: April 9, 2007            Respectfully submitted,


                     /s/ Ellen A. Scordino
                     Peter J. Armenio (PA-6827)
                     Ellen A. Scordino (ES-5127)
                     Gregory A. Morris (GM-6537)
                     KIRKLAND & ELLIS LLP
                     Citigroup Center
                     153 East 53rd Street
                     New York, NY  10022
                     Telephone:  (212) 446-4800
                     Facsimile:  (212) 446-4900

                     *Attorneys for Defendants*

# EXHIBIT A

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

INFOSINT S.A.,

               Plaintiff,

   -against -

H. LUNDBECK A/S, LUNDBECK, INC.,
and FOREST LABORATORIES, INC.,

               Defendants.

Case No.:    06 CV 2869 (LAK) (RLE)

         ECF Case

**PROTECTIVE ORDER**

Pursuant to Federal Rule of Civil Procedure 26(c), and after considering the arguments of plaintiff Infosint S.A. ("Infosint") and Defendants and Counterclaim Plaintiffs H. Lundbeck A/S, Lundbeck, Inc., and Forest Laboratories, Inc. (hereinafter individually referred to as a "Party" or collectively as "the Parties"), the Court finds that good cause exists for entry of a protective order to prevent unauthorized disclosure and use of the Parties' trade secrets and other confidential or proprietary information during and after the course of this litigation. Accordingly, IT IS HEREBY ORDERED THAT:

1.  The terms "Confidential Material" shall include all information, documents and other materials revealed or disclosed during the proceedings and trial of the above matter that are designated as Confidential Material in the manner set forth in paragraphs 3, 4 and 5 of this Order. Material shall be designated as Confidential Material only when the designating Party has a good-faith belief that the material contains trade secrets or other proprietary information that can be the subject of protection under Fed. R. Civ. P. 26(c), and that such information is not (1) public information or (2) already known to the receiving Party and not the subject of an

obligation of secrecy to the designating Party. Such designation shall, without more, subject the designated material to the provisions of this Protective Order, and all such material shall be protected, used, handled and disposed of strictly in accordance with the provisions of this Order.

2.  Except as specifically authorized by this Court, Confidential Material shall not be disclosed or revealed to anyone not authorized by this Order to receive such material and any person receiving such information shall use it solely for the purpose of preparing for or conducting this litigation. All persons to whom Confidential Material is disclosed shall be informed of and made aware of the terms of this Protective Order.

3.  Subject to the provisions of paragraphs 1 and 2 of this Order, any document produced by a Party in this litigation may be designated as Confidential Material by marking "CONFIDENTIAL SUBJECT TO PROTECTIVE ORDER" on the face of the document prior to or at the time of production. Such a designation shall mean that a Party claims in good faith that the document contains or discloses information relating to, referencing or pertaining to trade secrets or other confidential research, development or commercial information within the meaning of Federal Rule of Civil Procedure 26(c)(7).

4.  In the event that a producing Party believes access to certain information, documents or tangible item(s) requested by the receiving Party should be more limited than is provided in paragraph 7 below, the producing Party may additionally designate the information "Outside Counsel Eyes Only." Information appropriate for designation as "Outside Counsel Eyes Only" shall presumptively include pending patent applications, current manufacturing processes, and ongoing research and development concerning 5-carboxyphthalide and/or citalopram and/or processes for making them. Disclosure of information designated "Outside Counsel Eyes Only" shall be limited to the persons identified in subparagraphs 7(a), 7(b) and 7(e)-(j) below.

5.  Subject to the provisions of paragraphs 1 and 2 of this Order, counsel for a Party may designate any portion of any deposition testimony as Confidential Material. The counsel

2

desiring to designate any portion of a deposition as Confidential Material may do so on the record while the deposition is being taken. Alternatively, the transcript of the deposition (or of any other testimony), or any portion thereof, may be subsequently designated as containing Confidential Material in accordance with this Order by notifying the opposing Party in writing, within thirty (30) calendar days of receipt of the transcript of the specific pages and lines of the transcript which contain Confidential Material. All such transcripts shall be treated as subject to this Protective Order until a time thirty (30) calendar days after a transcript of the deposition is received. Any portion of any deposition testimony that is not designated in accordance with this paragraph shall not be entitled to the protection afforded under this Protective Order.

6.   Except upon the prior written consent of the producing Party, or upon further Order of this Court, Confidential Material shall be treated strictly in accordance with the provisions of this Protective Order and may be used or disclosed only as specified in this Protective Order.

7.   Access to Confidential Material shall be limited to:

(a)   Outside counsel for respective Parties to this litigation who have entered an appearance in this litigation and the secretarial, clerical, paralegal and other supporting personnel of said outside counsel;

(b)   Paolo Nodari, Infosint's Italian counsel, after he has executed the Undertaking attached hereto as Exhibit A;

(c)   Charles Ryan, John Meidahl Petersen and Thomas Kirbak, in-house legal personnel for Defendants and Counterclaim Plaintiffs in the above-captioned action, their secretarial, clerical, paralegal and other supporting personnel;

(d)   Stefano de Bosio and Gianfranco Dragotti, Italian counsel for Infosint in the above-captioned action, after each has executed the Undertaking attached hereto as Exhibit A;

(e)  Experts or consultants (and their employees or clerical assistants) who are not employees of any Party, and who are retained or otherwise consulted by outside counsel to assist in the preparation and trial of this litigation.

(f)  Court personnel in the conduct of their official duties and the trier of fact;

(g)  Qualified persons taking testimony, such as court reporters and videographers, and necessary stenographic and clerical personnel reporting to them;

(h) Duplicating services and auxiliary services of like nature, routinely engaged by outside counsel;

(i) Litigation support services retained by Parties to prepare document databases, trial exhibits and the like;

(j) Translators who agree to be bound by this protective order and sign the undertaking attached hereto, and secretarial and other support personnel employed by them.

8.   The designated in-house legal personnel and Italian counsel of Subparagraphs 7(c) and 7(d) shall be permitted to inspect and have access to any Confidential Material not designated "Outside Counsel Eyes Only" and to discuss such Confidential Material with any other person identified in Paragraph 7.  Such in-house legal personnel and Italian counsel, however, may retain copies of documents designated or containing Infosint Confidential Material only in a location exclusively within their control (e.g., in a secure office or in a locked file cabinet) or in a location that is controlled by outside counsel.

9.   Before disclosing Confidential Material to any person under paragraph 7(e), the Party seeking to make such disclosure shall first give ten (10) business days prior written notice to counsel for the opposing Party of the name and address of the person to whom the disclosure is to be made, including a copy of the Undertaking attached hereto as Exhibit A filled out and signed by such person, and a current resume disclosing such person's prior or present relationship, if any, with the Parties.  If the opposing Party has a good-faith basis for believing it would be harmed by the proposed disclosure, it may object in writing to such disclosure within

ten (10) business days after receipt of the notice. In the event of an objection, the Parties shall promptly confer to attempt to resolve the concerns giving rise to the objection. If the Parties are unable to reach agreement regarding such disclosure, the Party objecting to the disclosure may within ten (10) business days, request this Court to issue an order barring the disclosure. No disclosure shall be made pending the ruling and Order of the Court. The Court may impose such restrictions as it deems appropriate on such disclosure as a condition of issuing such Order.

10. Confidential Material shall under no circumstances be disclosed to any person under paragraph 7(e) unless and until such person has executed the Undertaking attached to this Order as Exhibit A.

11. Confidential Material may be disclosed to a witness in the course of his or her deposition, hearing or trial testimony in this action who is not authorized to receive Confidential Material under the terms of this Protective Order, so long as such examination concerns Confidential Material that the witness authored or previously had access to or knowledge of, as demonstrated by the Confidential Material itself or by foundation testimony during a deposition, hearing or trial. This Protective Order shall not prevent counsel from examining a witness in a good-faith effort to determine whether he or she authored or previously had access to Confidential Material.

12. Confidential Material may be used or submitted to the Court in connection with any filing or proceeding in this litigation, but the Party using such Confidential Material shall cause it to be filed separately under seal with the Clerk of the Court. To the extent that any papers that contain Confidential Material are submitted to or filed with the Court, they shall be submitted or filed in a sealed envelope bearing a legend in substantially the following form clearly written on the face of the envelope under the name and case number of this litigation:

<u>CONFIDENTIAL -- SUBJECT TO PROTECTIVE ORDER</u>

The contents of this envelope are subject to a Protective Order entered by the Court in the above-captioned case, shall be treated as confidential and must not be shown to any person except as authorized by an order of the Court.

13. Confidential Material may be used in the course of the trial of this action, subject to such restrictions as imposed by the Court.

14. In the event any of the Parties: (a) is subpoenaed in another action, or (b) is served with a demand in another action to which it is a Party, or (c) is served with any other legal process by a person not a Party to this litigation, and is requested to produce or otherwise disclose Confidential Material that was so designated by another Party, the Party subpoenaed or served as referred to in this paragraph shall object to production of the Confidential Material, and give prompt written notice to producing Party and notify the Party seeking the discovery of the existence of this Protective Order.  Nothing in this Order shall be construed as requiring the Party covered by this Protective Order to challenge or appeal any order requiring production of Confidential Material covered by this Protective Order, to subject itself to any penalties for noncompliance with any legal process or order, or to seek any relief from this Court.

15. Nothing in this Protective Order shall be construed as constituting a finding that any designated Confidential Material actually constitutes or contains proprietary or confidential information or trade secrets within the meaning of Fed. R. Civ. P. 26(c)(7).  There shall be no obligation to challenge a Confidential Material designation when made and failure to do so shall not preclude a subsequent challenge.  If a Party objects to the designation of any material as Confidential Material, counsel for the Parties shall confer and seek to resolve the issue.  If the issue cannot be resolved, the objecting Party may apply to this Court for a ruling that the information or material shall not be so designated.  The burden shall then be on the Party designating the information as Confidential Material to establish that the material constitutes or contains proprietary or confidential information or trade secrets.  If such a showing is not made

6

to the satisfaction of the Court, the information shall no longer be treated as Confidential Information.

16. Nothing in this Protective Order shall bar or otherwise restrict any counsel representing a Party in this action from rendering advice to his or her client with respect to this litigation. In the course of doing so, counsel may generally refer to or rely upon his or her conclusions or opinions formed upon examination of Confidential Material, but shall not disclose the content of Confidential Material to persons not authorized to receive such material pursuant to this Protective Order.

17. If any documents or information which a Party believes it is entitled to maintain as Confidential Material are inadvertently produced without the appropriate designation, assertion of such proprietary status by the producing Party shall be made as soon as practical (and no later than 10 business days) after learning of the inadvertent production. Such inadvertent production shall not be deemed a waiver of any claim of confidentiality, but the Party to which such inadvertent production was made shall not be liable for or deemed in violation of this protective order for any use or disclosure of the information between the time of its inadvertent production and the time the proprietary status is asserted. The receiving Party shall use good-faith efforts to attempt to recover such inadvertently produced material from any unqualified person who may have been given access to it prior to the assertion by the producing Party that such material was Confidential Material, or shall attempt to have the unqualified person become qualified under this protective order. However, no liability shall accrue to the receiving Party if such attempted recovery or qualification is not successful.

18. Within thirty (30) days of the final conclusion of this litigation, including any appeals, all persons to whom Confidential Material has been disclosed shall, without demand, either (a) destroy, or (b) return to the Party that originally produced it, all Confidential Material (and all copies of such material) and all other documents containing information taken from such

material, except that each Party's outside counsel identified in subparagraphs 7(a) and 7(b) may retain one archival copy of pleadings, briefs, motions, deposition transcripts and exhibits thereto, and the like, that include such material.  The in-house legal personnel and Italian counsel identified in subparagraphs 7(c) and 7(d) may retain one archival copy of the briefs (excluding any exhibits containing Confidential Material) filed with the Court, and orders issued by the Court, so long as they (if containing Confidential Material and not publicly available) are kept as provided in paragraph 8.  All recipients of Confidential Material shall then certify in writing to counsel for the producing Party that they have complied with the provisions of this paragraph.

19. Upon the final conclusion of this litigation:

(a)  any Confidential Material produced hereunder that has been submitted for identification or into evidence at any hearing or trial in this litigation may be requested to be withdrawn by counsel for the Party asserting the claim of confidentiality for the Confidential Material; and

(b)  the Clerk is authorized to deliver said Confidential Material to said counsel, absent any contrary Order of this Court.

20. Nothing in this Order shall be deemed a waiver of any right any Party otherwise might have under the Federal Rules of Civil Procedure or of the doctrines of attorney-client privilege or attorney work product.

21. If information subject to a claim of attorney-client privilege or work-product immunity is inadvertently or mistakenly produced, such production shall in no way prejudice or constitute a waiver of, or estoppel as to, any claim of privilege or work-product immunity for such information.  If a Party has inadvertently or mistakenly produced information subject to a claim of immunity or privilege, the producing Party may request the return of such information from the receiving Party, provided the producing Party informs the receiving Party within ten (10) business days of the discovery of the disclosure of such information.  The receiving Party

shall return all copies of such information and any extracts therefrom within five (5) business days of receiving such a request.  The receiving Party shall further destroy all notes or summaries referring or relating to any such inadvertently or mistakenly produced information. The receiving Party may move the Court for an Order compelling production of such information but may not rely on the inadvertent production of such information as a basis for seeking its production.

22. Counsel identified under subparagraphs 7(a) and 7(b) who view confidential Material with the "Outside Counsel Eyes Only" designation shall be restricted from prosecuting patent applications for a Party for the pendency of this litigation, and for two years after its conclusion, concerning 5-carboxyphthalide and/or citalopram and/or processes for making them.

23. This Protective Order shall survive the final conclusion of this litigation and shall continue in full force and effect and the Court shall retain jurisdiction over the Parties to enforce this Protective Order.

24. This Protective Order may be modified or amended by further order of the Court for good cause shown.

25. This order shall not prevent any Party from applying to the Court for further or additional protective orders.

Dated:

                                       _____

                                       Hon. Lewis A. Kaplan
                                       United States District Judge

                                       Hon. Ronald L. Ellis
                                       United States Magistrate Judge

Agreed as to form and substance:

October ___, 2006

By:    _____
       James Galbratih (JG-4451)
       Maria Luisa Palmese (MP-5855)
       Colman B. Ragan (CR-0961)
       KENYON & KENYON LLP
       One Broadway
       New York, NY 10004
       (212) 425-7200
       *Attorneys for plaintiff*
       *Infosint S.A.*


By:    _____
       Peter J. Armenio (PA-6827)
       Ellen A. Scordino (ES-5127)
       Gregory A. Morris (GM-6537)
       KIRKLAND & ELLIS LLP
       Citigroup Center
       153 East 53rd Street
       New York, New York 10022
       Telephone: (212) 446-4800
       Facsimile: (212) 446-4900
       *Attorneys for defendants*
       *H. Lundbeck A/S*
       *H. Lundbeck, Inc.*
       *Forest Laboratories, Inc.*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| INFOSINT S.A.,<br><br>                     Plaintiff,<br><br>      -against -<br><br>H. LUNDBECK A/S, LUNDBECK, INC.,<br>and FOREST LABORATORIES, INC.,<br><br>                     Defendants. | Case No.:      06 CV 2869 (LAK)<br><br>                     ECF Case |

**UNDERTAKING PURSUANT TO**
**STIPULATED PROTECTIVE ORDER**

I, _____, residing at _____

_____, have been given a copy of the Stipulated Protective Order

entered into in the above-captioned litigation and I have read the same.  I agree that any

Confidential Material which I gain access to will be protected by me and used by me solely for

the purpose of this civil action and as is provided in said Order.

Date _____          (Signed) _____

11