UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
INFOSINT, S.A.,

                Plaintiff,

        -against-                              06 Civ. 2869 (LAK)

H. LUNDBECK A/S, et al.

                Defendants.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

## MEMORANDUM OPINION

Appearances:

        James Wright Galbraith
        Maria Luisa Palmese
        Robert V. Cerwinski
        Merri C. Moken
        Esther Hagege
        KENYON & KENYON
        *Attorneys for the Plaintiff*

        Peter J. Armenio
        Ellen A. Scordino
        Jeanne M. Heffernan
        Melanie R. Rupert
        KIRKLAND & ELLIS LLP
        *Attorneys for the Defendants*

LEWIS A. KAPLAN, *District Judge.*

        Plaintiff charges defendants with infringing its patent for the synthesis of a chemical compound used in the manufacture of certain pharmaceuticals by selling in the United States the antidepressant drug citalopram, which defendants allegedly made in part by using plaintiff's patented process.  The matter is before the Court on defendant Forest Laboratories, Inc. and defendant Forest Pharmaceuticals, Inc.'s motion for partial summary judgment.

*Background*

Plaintiff Infosint, S.A. ("Infosint") owns U.S. Patent 6,458,973 (the "'973 patent"), which claims an improved process for making the compound 5-carboxyphthalide, an intermediate product in the synthesis of citalopram.  Citalopram is a well-known antidepressant marketed in the United States under the names Celexa and Lexapro.[1]

Defendant H. Lundbeck A/S ("Lundbeck"), a Danish corporation, manufactures citalopram outside of the United States.[2]  Forest Laboratories, Inc. and Forest Pharmaceuticals, Inc., both Delaware corporations, (collectively "Forest"), market and sell citalopram in the United States pursuant to license and supply agreements with Lundbeck.[3]  Infosint does not allege that Forest manufactures citalopram.[4]  According to Lundbeck's 1998 annual report, Forest is Lundbeck's "strategic partner in the USA" and "is responsible for the introduction and sale of [citalopram] in the American market."[5]

Forest now moves for partial summary judgment determining that it is not liable for damages resulting from any alleged infringement of the '973 patent prior to April 12, 2006, the date Infosint filed the complaint in this case.[6]  Forest bases its argument on 35 U.S.C. § 287(b), which

---

[1]  Pl. Ex. 13 at 2-3; Pl. Ex. 24 at 60

[2]  Ans. ¶ 2.

[3]  Ans. ¶ 4; Am. Ans. ¶ 5; Def. Ex. 11; Pl. Ex. 16 at 10.

[4]  Cpt.

[5]  Pl. Ex. 5 at 70.

[6]  Def. Rule 56.1 ¶ 7.

3

protects certain so-called "innocent infringers" – those who possess or import into the United States products made by processes patented in the United States before they had notice of the infringement.

*Discussion*

A.   *Legal Standard*

Summary judgment is appropriate if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law.[7]  The Court must view the facts in the light most favorable to the nonmoving party[8] and the moving party has the burden of demonstrating the absence of a genuine issue of material fact.[9]  Where the burden of proof at trial would fall on the nonmoving party, however, it ordinarily is sufficient for the movant to point to a lack of evidence on an essential element of the nonmovant's claim.[10]  In that event, the nonmoving party must come forward with admissible evidence[11] sufficient to raise a genuine issue of fact for trial or suffer an adverse judgment.[12]

---

[7]

See FED. R. CIV. P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *White v. ABCO Eng'g Corp.*, 221 F.3d 293, 300 (2d Cir. 2000).

[8]

See *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962); *Hetchkop v. Woodlawn at Grassmere, Inc.*, 116 F.3d 28, 33 (2d Cir. 1997).

[9]

See *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

[10]

See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Virgin Atl. Airways Ltd. v. British Airways PLC*, 257 F.3d 256, 273 (2d Cir. 2001).

[11]

See, e.g., *Nora Beverages, Inc. v. Perrier Group of Am., Inc.*, 269 F.3d 114, 123-24 (2d Cir. 2001).

[12]

See, e.g., *Nebraska v. Wyoming*, 507 U.S. 584, 590 (1993); *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995).

4

B.      *Analysis*

Forest contends it is entitled to a limitation of its damages pursuant to 35 U.S.C. §
287(b).  That section applies to a patent infringer who "without authority imports into the United States
or offers to sell, sells, or uses within the United States a product which is made by a process patented
in the United States."[13]  It provides a safe harbor from the remedies for infringement imposed by 35
U.S.C. § 271(g) with respect to "any product in the possession of, or in transit to, the person subject to
liability . . . before that person had notice of infringement with respect to that product."[14]

Forest argues that Infosint cannot recover any damages that accrued prior to the date that
Infosint first provided Forest notice of its infringement allegations, even assuming it infringed the '973
patent.  The parties agree that Infosint's first such communication was the complaint in this action.[15]
However, as Infosint correctly notes, the plain language of Section 287(b)(2) does not require the party
alleging infringement to provide the notice.  That section defines "notice" as "actual knowledge, *or*
receipt by a person of a written notification, *or* a combination thereof, of information sufficient to
persuade a reasonable person that it is likely that a product was made by a process patented in the United
States."[16]  Thus the fact that Infosint did not provide notice of the alleged infringement prior to filing its
complaint does not establish the absence of a genuine issue of material fact as to whether Forest knew
it was likely that products in its possession were made by a process patented here.

---

[13]     35 U.S.C. § 271(g).

[14]     *Id*. § 287(b)(2).

[15]     Def. Rule 56.1 St. ¶ 9; Pl. Br. at 7.

[16]     35 U.S.C. § 287(b)(5)(A) (emphasis added).

5

As the language of the statute is unambiguous, the Court regards it as conclusive.[17] However, the legislative history of Section 287(b) clearly supports the interpretation that notice may come from sources other than the plaintiff.  The Senate committee report explained that:

> "Notice of infringement occurs when the alleged infringer has a combination of information sufficient to persuade a reasonable person that it is likely that a product was made by a patented process.  This combination of information will include actual knowledge . . . , the information contained in the notification from the patent holder and *any other information known to the accused* relevant to the issue of infringement."[18]

The drafters thus contemplated that "any" information, not just information from the patent holder, could provide sufficient notice.  Additionally, the Committee Report explained that the rationale behind the safe harbor provision was "to shelter only purchasers who are remote from the manufacturer and not in the position to protect themselves in contracts with the party who is actually using the [patented] process."[19]  The provision was not intended to protect retailers with the "resources to send agents to other countries to seek suppliers," who "should be able and willing to exercise more vigilance" in avoiding infringement.[20]

Forest was not a "remote" seller with little bargaining power.  It negotiated a multi-year supply and license agreement with Lundbeck, a Dutch corporation, to market and sell in the United

---

[17]

*Burlington N. R.R. Co. v. Okla. Tax Comm'n*, 481 U.S. 454, 461 (1987) ("Legislative history can be a legitimate guide to a statutory purpose obscured by ambiguity, but [i]n the absence of a clearly expressed legislative intention to the contrary, the language of the statute itself must ordinarily be regarded as conclusive.") (internal quotation marks omitted) (alteration in original).

[18]

S. Rep. No. 100-83 (1987), 1987 WL 967478, at *19 (emphasis added).

[19]

*Id.*

[20]

*Id.*

6

States citalopram tablets manufactured by Lundbeck.[21]  Their relationship was close enough for Lundbeck to describe Forest as its "strategic partner."[22]  Forest is precisely the sort of retailer Congress did not intend to shelter from liability.

Forest points to no other undisputed facts in support of its motion for summary judgment. Indeed, it is significant that Forest does not argue that it lacked notice.  It argues only that Infosint did not provide notice prior to April 12, 2006. As Forest could have received notice that processes used by Lundbeck in manufacturing citalopram infringed the '973 patent by means other than communication from Infosint, Forest has failed to demonstrate there is no genuine issue of material fact as to whether Forest had notice of infringement.

*Conclusion*

Forest's motion for partial summary judgment [docket item 77] is denied.

SO ORDERED.

Dated:         May 5, 2009

_____
Lewis A. Kaplan
United States District Judge

(The manuscript signature above is not an image of the signature on the original document in the Court file.)

---

[21]
Pl. Ex. 6 (Licence and Supply Agreement); *see also* Pl. Exs. 7, 8, 11, 12, 13, 27 (additional agreements between Forest and Lundbeck)

[22]
Pl. Ex. 5 at 70.